IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ROBERT NARVELL CARNAHAN,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-07-388 |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (Dkt. No. 8), filed by Robert Narvell Carnahan ("Petitioner"), an inmate of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"). Also pending before the Court are Respondent's Motion for Summary Judgment (Dkt. No. 19) and Petitioner's Motion for Extension of Time to Respond to Motion for Summary Judgment (Dkt. No. 20). After considering the motions, responses, record and applicable law, the Court concludes that Petitioner's Motion for Extension of Time to Respond to Motion for Summary Judgment should be GRANTED, Respondent's Motion for Summary Judgment should be GRANTED and Petitioner's habeas petition should be DISMISSED.

### Factual & Procedural History

Petitioner is incarcerated pursuant to the judgment and sentence of the 347th District Court of Nueces County, Texas, in cause number 01-CR-3833-H, styled *The State of Texas v. Robert Narvell Carnahan*. *Ex parte Carnahan*, Application No. 68,245-01 at 284-90; Nueces County Clerk's Record ("CR") at 271-77. In 2001, the Government charged Petitioner with thirteen counts

of various sexual offenses, including three counts of indecency with a child, five counts of aggravated sexual assault of a child and five counts of sexual assault of a child. CR at 2-7; *Ex parte Carnahan* at 250-55. Following his plea of not guilty, Petitioner proceeded to trial and was found guilty on all counts brought against him. *Ex parte Carnahan* at 48-50; CR at 60-62. On January 10, 2003, Petitioner was sentenced to eight 15-year sentences and five 30-year sentences to be served concurrently at the TDCJ-CID. *Id.*

Following an unsuccessful motion for new trial, Petitioner timely appealed his conviction and sentence to the Thirteenth District Court of Appeals of Texas, which upheld the trial court's proceedings in their entirety. *See Carnahan v. State*, No. 13-03-00155-CR, 2005 WL 1313428 (Tex. App.—Corpus Christi, June 2, 2005) (finding that sufficient evidence existed to support a conviction, the sentence was proper and no harmful error occurred). Petitioner then filed a Petition for Discretionary Review ("PDR") with the Texas Court of Criminal Appeals ("CCA"), which was refused on January 18, 2006. Dkt. No. 8 at 3; *Carnahan v. State*, PDR No. 1251-05. Petitioner next filed a petition for writ of certiorari with the United States Supreme Court, which was denied on June 26, 2006. Dkt. No. 21 at 2; *Carnahan v. Texas*, 126 S.Ct. 2969 (2006); Texas Judiciary Website, http://www.13thcoa.courts.state.tx.us.

Nearly a year later, on June 2, 2007, Petitioner filed a state application for writ of habeas corpus, which the CCA dismissed without written order on September 12, 2007. *Ex parte Carnahan* at 2, 12-13, 88, action taken sheet. Petitioner filed his state habeas application without affirming under oath or otherwise swearing to the truth of the allegations contained therein. *Id.* at 11-12.

Finally, on August 30, 2007, Petitioner filed his federal petition for habeas relief under 28 U.S.C. § 2254.[1] Dkt. No. 8 at 9; *Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (a federal habeas petition is considered filed on the date it is placed in the prison mail system). Petitioner's federal habeas petition was originally filed in the Eastern District of Texas, Tyler Division and subsequently transferred to this Court. Dkts. No. 8 & 9.

As stated by the Thirteenth Court of Appeals, the following facts were established at trial:

> Carnahan married the girls' mother in May 1993, when the girls were about nine and ten years old. The older stepdaughter was born on January 1, 1983. The younger one was born on April 29, 1984. At the time of the marriage, Carnahan moved into the townhome where the girls were living with their mother. Allegations of sexual contact arose after the younger stepdaughter told a neighbor, during the summer of 2001, that Carnahan had molested her for the last six years. From the neighbor, the jury heard that the younger stepdaughter told her Carnahan attempted intercourse with her when she was in the fourth grade. The girls' mother confirmed the outcry from the younger stepdaughter and asked the older stepdaughter about sexual contact by Carnahan. The older stepdaughter confirmed it had occurred.
>
> The older stepdaughter testified she was nine or ten years old and in the fourth grade when her mother began dating Carnahan. Molestation began a few months after the marriage in 1993. She described for the jury sexual contact and multiple acts of sexual contact by Carnahan. She testified that the contacts and conduct occurred enough that she dreaded weekends at home and looked forward to Mondays and school. The contact stopped when she reached the sixth grade, when she was twelve years old.
>
> The younger child described for the jury years of sexual contact and multiple acts of sexual conduct by Carnahan, spanning from 1995 through 2001. The incidents began in the fall of 1995 when she was in the fifth or sixth grade and stopped the summer of her senior year in high school.
>
> Admitted in evidence was a letter Carnahan sent the girls' mother, which stated, in part, "If you really want to know about [the younger stepdaughter], she is not at all what you believe. There was very little touching, but every bit of it was by her

---

[1] Petitioner filed a letter on July 23, 2007 asking the Court for assistance in filing his federal habeas petition. Pursuant to an Order dated July 31, 2007, which instructed Petitioner to submit a standardized § 2254 form within 30 days, Petitioner placed his proper habeas petition in the prison mail system on August 30, 2007. Dkt. No. 4; Dkt. No. 8 at 9. The Court notes that even if it were to adopt July 23, 2007 as the date Petitioner filed his federal petition, such a position would not alter the Court analysis or conclusions as set forth below.

inducement and request"[]. Both girls testified about marital discord between Carnahan and their mother. They denied telling their mother about the incidents prior to the younger stepdaughter's outcry. The jury heard that their mother pursued divorce proceedings the day after the outcry.

Two defense witnesses testified that social visits with Carnahan and his stepdaughters revealed normal interaction between them, but marital problems existed between Carnahan and the girls' mother. Carnahan testified in his own defense. He told the jury that the younger stepdaughter asked him to look at a cyst on her leg because she was aware of his "pre-med" background. He viewed the cyst, in his wife's presence, and explained to the younger stepdaughter that the bump was a swollen lymph node. He checked the cyst daily. He denied that his checking the cyst led to sexual contact.

Carnahan denied the charges. He admitted writing the letter to the girls' mother, explaining that he wrote it because he was contemplating suicide after receiving news of his indictment. He related to the jury that he gave the girls rubdowns at their request because their muscles hurt, but "it sure wasn't anything sexual. It was a chore, a monotonous chore, almost daily." He described numerous incidents regarding such contact. He admitted fleeing to Costa Rica pending trial.

*Carnahan v. State*, No. 13-03-00155-CR, 2005 WL 1313428, at *12-13 (Tex. App.—Corpus Christi, June 2, 2005).

## Claims and Allegations

The Court understands Petitioner to allege the following:

1. His trial counsel was ineffective based on his failure to (a) present a defense; (b) explain to the jury that a letter written by Petitioner to the victims' mother should have been construed as a threat and not an admission of guilt; (c) object to un-adjudicated, and thus improperly admitted, extraneous offenses; (d) present evidence of Petitioner's relationship with the victims; (e) present evidence to refute the testimony of a witness for the prosecution; and (f) allow Petitioner to testify.

2. His appellate counsel was ineffective based on his failure to appeal on the grounds of ineffective assistance of trial counsel.

4

**Summary Judgment Standard**

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the court construes factual controversies in a light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998).[2] The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, a non-movant must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the

---

[2] The Fifth Circuit has held that Rule 56 applies only to the extent it does not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts), *cert. granted in part on other grounds, and dism'd*, 124 S. Ct 1652 (2004). Therefore, 28 U.S.C. § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *See id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *See id.*

evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## Discussion

### A. Statute of Limitations

Petitioner filed his federal habeas petition on August 30, 2007. Dkt. No. 8 at 9; *Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). His petition is thus subject to the amendments to the federal habeas corpus statutes embodied in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (holding that federal habeas petitions filed after AEDPA's April 24, 1996 effective date are subject to the provisions of that statute, including the statute of limitations) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). Under AEDPA, federal habeas petitions which challenge state court judgments are subject to a one-year limitations period pursuant to 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (emphasis added).

Respondent argues that applying AEDPA's statute of limitations to the facts in this case reveals that Petitioner's time to file his federal habeas petition began no later than June 27, 2006, one day after the United States Supreme Court denied Petitioner's petition for writ of certiorari. The limitations period set forth by Respondent would end on June 27, 2007 and render Petitioner's federal petition untimely.

A "properly filed" state habeas application, however, would toll the limitations period while the claim or judgment was pending in state court. *See* 28 U.S.C. § 2244(d)(2); *Villegas v. Johnson*, 184 F.3d 467, 470-73 (5th Cir. 1999). Petitioner contends that, pursuant to 28 U.S.C. § 2244(d)(2), his state application, which was filed on June 2, 2007 and dismissed September 12, 2007, should toll the applicable statute of limitations. The period Petitioner proposes would end on September 12, 2008, rendering his federal petition timely. Respondent contends that because Petitioner failed to sign an oath or otherwise swear to his application's veracity, his state application was not "properly filed" and thus should not toll the limitations period.

A state application for writ of habeas corpus is "properly filed" pursuant to § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000); *see also Villegas*, 184 F.3d at 470 (a properly filed application is "one that conforms with a state's applicable procedural filing requirements"). Texas Rule of Appellate Procedure 73.1 provides the form and content a habeas petition must include under Texas Code of Criminal Procedure article 11.07. TEX. R. APP. PROC. 73.1. Specifically, Rule

7

73.1(d) states that an application must be verified either by oath or declaration. *Id.* Rule 73.2 provides that applications that do not comply with the form prescribed by the Court of Criminal Appeals are not to be filed. TEX. R. APP. PROC. 73.2. Article 11.14 of the Texas Code of Criminal Procedure sets forth the procedural requirements for state applications for writs of habeas corpus. TEX. CODE. CRIM. PROC. ANN. art. 11.14. Section five of article 11.14 states that an "[o]ath must be made that the allegations are true, according to the belief of the petitioner." *Id.*

In addition to the Texas laws mentioned above, a recent Fifth Circuit case is instructive. In *Larry v. Dretke*, the Fifth Circuit reviewed a district court's dismissal of a petitioner's federal habeas petition as untimely. 361 F.3d 890 (5th Cir. 2004). In determining the federal petition was untimely, the district court found, among other things, that the petitioner's state application was not "properly filed" because it was filed before direct review of the petitioner's state conviction was complete. *Id.* at 892. Because Texas law divested the CCA of jurisdiction to consider the application, the district court refused to allow the state application to toll the limitations period. *Id.* Summarizing the law governing whether a state application is "properly filed," the Fifth Circuit announced that "an application is not 'properly filed' if the state court blindly applies the procedural bar in all cases without ever having to consider any potential exception to its prohibition or examine any issues related to the substance of the application." *Id.* at 893-94. The court emphasized that the CCA dismissed the petitioner's state application for want of jurisdiction because he filed his application before the appeal of his conviction had become final and no express statutory provision existed allowing for an exception to such a procedural bar. *Id.* at 893-95. The *Larry* court further stated that even if the state court "mistakenly accepts and considers the merits of a state habeas application in

8

violation of its own procedural filing requirements ... that application is not 'properly filed'" for the purposes of § 2244(d)(2). *Id.* at 895.

Primarily relying upon *Ex parte Golden*, Petitioner argues that because Texas courts have held that they are not necessarily divested from exercising jurisdiction over unsworn habeas petitions, and can thus address the merits of an unsworn petition in the court's discretion, his state habeas petition was "properly filed" and should toll the applicable limitations period. 991 S.W.2d 859 (Tex. Crim. App. 1999); *see also Ex parte Owens*, 206 S.W.3d 670, 679 (Tex. Crim. App. 2006) (Hervey, J., concurring) ("Based on *Ex parte Golden*, this Court has discretion to address the merits of an unsworn petition."). The Court does not agree.

Although *Ex parte Golden* indicates the CCA could have considered Petitioner's state habeas application on the merits, the state application was not "properly filed" because Petitioner failed to follow the proper procedural rules proscribed by Texas Rule of Appellate Procedure 73.1 and Texas Code of Criminal Procedure article 11.14, Section 5. Notably, although the CCA could have considered the merits of Petitioner's state application, it would not have done so based on any express statutory exception to the requirements contained in the state laws detailed above. The Fifth Circuit opinions relied upon by the *Larry* court indicate that such a circumstance must exist for a state application to be "properly filed" even though it violates of a state procedural rule. *See Williams v. Cain*, 217 F.3d 303, 309 (5th Cir. 2000) (an application filed in violation of a procedural rule is not "properly filed" unless the statute at issue specifically provides "grounds that, if alleged and proved, require[] a state habeas court to consider an otherwise [improperly filed] application"); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000) (petitioner "properly filed" his state application despite failing to comply with a state procedural rule because the state rule explicitly allows for

discretion to consider applications under certain circumstances); *Villegas v. Johnson*, 184 F.3d 467, 470-72 & n.4 (5th Cir. 1999) (an application was "properly filed" although it did not comply with a state successive petition bar because, based on the rule itself, state courts can accept and review successive petitions); *see also Williams v. Dretke*, Civ. A. No. H-04-2876, 2005 WL 1607458, at *3-4 (S.D. Tex., July 5, 2005) (an application that does not comply with TEX. R. APP. PROC. 73.2 is not "properly filed" for post-conviction review under § 2244(d)(2)). The state procedural requirements at issue here do not set forth an exception that would require a state court to consider an otherwise improperly filed state habeas application. As noted above, even if a state court accepts or files a petitioner's state habeas application, if it does so in violation of its own procedural filing requirements, the application is not "properly filed" for the purposes of § 2254(d)(2). Accordingly, Petitioner's state application was not "properly filed" and thus did not extend the limitations period.

Petitioner is also not entitled to equitable tolling. Equitable tolling of AEDPA's statute of limitations is available only in "exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998). As the Fifth Circuit has explained, the doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). Petitioner's age, pro se status, lack of legal assistance and lack of access to an ideal law library do not excuse his untimely filing. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 1999); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *Davis*, 158 F.3d at 808-12. The fact that Petitioner spent nearly forty years as a practicing attorney considerably undermines his claims for equitable tolling on such bases. *See Carnahan v. State*, No. 13-03-00155-CR, 2005 WL 1313428, at *4 (Tex.

App.—Corpus Christi, June 2, 2005). Complaints about his health and hospitalization, moreover, are unavailing because Petitioner has not shown that his circumstances have in fact prevented him from managing his affairs and acting upon his legal rights in a timely and proper manner. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *see also Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003) (a petitioner must, in detail, specify how poor health and/or a hospitalization prevented him from filing in a timely fashion). Finally, the Court notes that Petitioner waited nearly a year after the United States Supreme Court denied his petition for writ of certiorari before filing his state habeas application. Petitioner provides no explanation for his delay. *See Fisher*, 174 F.3d at 715 ("[E]quity is not intended for those who sleep on their rights.") (internal quotations and citations omitted). Because Petitioner has presented no facts indicating he was prevented in some extraordinary way from asserting his rights, the Court finds it clear that no equitable tolling should apply.

Therefore, Petitioner's claims are hereby dismissed as time-barred.[3] Even if the Court were to consider Petitioner's federal petition timely filed, however, the claims therein fail on the merits as discussed below.

**B      Ineffective Assistance of Counsel**

   **1.      Ineffective Assistance Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court laid out the basic framework for evaluating ineffective assistance of counsel claims. To succeed on an ineffective assistance claim a petitioner must make two showings. First, he must demonstrate that his lawyer's performance was so derelict that "counsel was not functioning as the 'counsel' guaranteed by the

---

[3] Respondent also contends that Petitioner's failure to sign an oath or otherwise swear to the veracity of his state habeas application prevented Petitioner from presenting the merits of his petition to the CCA, rendering the federal filing unexhausted. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (before seeking relief in the federal courts, a habeas petitioner must fairly present his claims to the CCA). Although the reasoning above may apply when determining whether Petitioner's state application was fairly presented to the CCA, resolution of this issue is unnecessary because Petitioner's federal petition fails on other grounds.

Sixth Amendment." *Id.* at 687. Then he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court elaborated on this standard in *Lockhart v. Fretwell*, 506 U.S. 364 (1993), holding that, "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him," even if the outcome of the trial might have been different but for counsel's errors. *Id.* at 372. The *Strickland* test is equally applicable in the appeals context. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). However, in the appeals context, the second prong of the *Strickland* test is addressed to whether or not a defendant would have prevailed on his appeal. *Id.*

Because conducting a trial is an art, not a science, the courts indulge a heavy presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In addition, reviewing courts must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In noncapital cases this standard requires a habeas petitioner to make a showing of "significant prejudice." *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88, n.4 (5th Cir. 1993)).

### 2.     Application of the Standard to the Trial

Petitioner claims that his trial counsel was constitutionally defective because he failed to (a) present a defense; (b) sufficiently explain to the jury the alleged meaning of a letter written by Petitioner to the victims' mother; (c) object to un-adjudicated extraneous offenses; (d) present evidence of Petitioner's relationship with the victims; (e) present evidence to refute one of the witness's testimony; and (f) allow Petitioner to testify.

To the extent Petitioner asserts his trial counsel was ineffective via grounds (a), (b), (d), (e) and (f) described above, his claims are wholly refuted by the record. Indeed, Petitioner's trial attorney fully cross-examined each of the prosecution's witnesses and called several witnesses in Petitioner's defense. Reporter's Record ("RR"), Vol. 5 at 56-85, 108-34, 142-54, 159-96; RR, Vol. 6 at 4-36. Petitioner, moreover, testified at trial regarding an alternative explanation as to the meaning and significance of the letter, his relationship to the victims and his belief that the prosecution witness complained of was "the biggest tramp in this city" and simply "sex obsessed." RR, Vol. 6 at 72-77, 80-81, 96-101, 129-49, 152.

To the extent Petitioner could be understood as arguing that his trial counsel should have engaged in further investigation to prepare a suitable defense, Petitioner has failed to assert what specific evidence further investigation would turn up or how such evidence may have been favorable to his defense. *See Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). As for Petitioner's contention that his counsel was ineffective based on his failure to object to improperly admitted, un-adjudicated extraneous offenses, Petitioner has failed to allege with specificity what offenses were purportedly admitted in error. Without direction or substantiation, Petitioner's allegation is merely conclusory and such an assertion is an insufficient ground upon which to grant habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, 'mere' conclusory allegation on a critical issue are insufficient to raise a constitutional issue.").

Moreover, in light of the circumstances surrounding Petitioner's trial, including the consistency and force of the witness testimony brought against him, his admitted fleeing to Costa

13

Rica pending trial and the letter written to the victim's mother,[4] it is difficult to imagine that even a model performance by trial counsel would have resulted in a different verdict. In other words, in view of the overwhelming inculpatory evidence presented at trial, even if the court were to presume that Petitioner's trial counsel was defective in some respects, the errors alleged by Petitioner would be insufficient to undermine confidence in the reliability of the conviction.

Based on the foregoing, Petitioner has clearly failed to establish either prong of the *Strickland* analysis—that his trial counsel was ineffective or that but for his attorney's alleged failures, the result of the trial would have been different. Because Petitioner has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by his attorney's alleged deficiencies, his claims of ineffective assistance of trial counsel do not warrant habeas relief.

### 3.     Application of the Standard to the Appeal

Petitioner maintains that his appellate counsel was ineffective because he failed to appeal on grounds that Petitioner's trial counsel was constitutionally defective. However, as the CCA has

---

[4] Petitioner's handwritten letter, which he admitted to have written, stated the following:

> Natalie [victims' mother], I am as crushed and devastated as I have ever been in my entire life. I have never ever had such treachery practiced on me, even by my worst enemy.
>
> What do you gain by this? You sure won't get any money. Betty gets it all and the kids get my half of the house. Did you want revenge? For what? If you really want to know about [one of the victim's], she is not at all what you believe. There was very little touching, but every bit of it was by her inducement and request. Whether you believe it, or not, that is true. "Come here, Bob, and rub my legs ... I have a cramp," as she took off her blue jeans. Then if I rubbed very long, she would say nothing but would take off her underwear. Sometimes then she would request the vibrator. Other times would say nothing, but would hunch and moan till [sic] the orgasm ... It was never for my benefit. Always what she wanted. Needed? Perhaps. I don't care whether you believe it or not, that is true.
>
> What do I do now? My law practice has never been this good. You would have benefitted well. But your treachery and back stabbing and blood sucking got us here.
>
> What do I do now? Die?
>
> RR, Vol. 11 at 4 (State's Trial Exhibit); RR, Vol. 5 at 51-53.

observed, because the record on direct appeal regarding a trial counsel's performance is often underdeveloped, "an application for writ of *habeas corpus* is [a] more appropriate vehicle [than direct appeal] to raise ineffective assistance of counsel claims." *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). The Court, moreover, after reviewing the record and applying the *Strickland* standard to the services rendered by Petitioner's trial counsel, is satisfied that an appellate court would have been exceedingly unlikely to find that Petitioner' trial counsel was ineffective. Therefore, Petitioner has failed to establish either deficiency or prejudice regarding his contention that his appellate counsel's services were constitutionally defective. Summary judgment is thus warranted as to Petitioner's claims.

**C.     Miscellaneous Motion**

Also pending is Petitioner's Motion for Extension of Time to Respond to Motion for Summary Judgment (Dkt. No. 20). The motion is granted and Petitioner's response will be deemed timely filed.

### Certificate of Appealability

Under 28 U.S.C. § 2253, Petitioner needs to obtain a certificate of appealability before he can appeal the dismissal of his petition. Although Petitioner has not yet filed a notice of appeal, the Court nonetheless addresses whether he would be entitled to a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (it is appropriate for a district court to address sua sponte the issue of whether a COA should be granted or denied).

A certificate of appealability may be issued only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, Petitioner must demonstrate that reasonable jurists could disagree on the issues at bar, that a court could resolve the issues in a different manner or that

the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998); *see also Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). For the reasons stated in this Order, Petitioner has not made a substantial showing of the denial of a constitutional right or that reasonable jurists would find the Court's rulings to be debatable. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). Therefore, the Court denies the issuance of a certificate of appealability in this action.

## Conclusion

For the reasons stated above, the court ORDERS the following:

1. Petitioner's Motion for Extension of Time to Respond to Motion for Summary Judgment (Dkt. No. 20) is GRANTED.

2. Respondent's Motion for Summary Judgment (Dkt. No. 18) is GRANTED.

3. Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 8) is DISMISSED.

4. A Certificate of Appealability shall not issue.

Signed this 9th day of May, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE